IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DRIVING FORCE TECHNOLOGIES, INC., § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. 4:10-cv-24 |
| § | | (consolidated 4:10cv25) |
| PANDA DISTRIBUTION, INC., § | | |
| d/b/a PANDA SECURITY USA, § | | |
| PANDA SECURITY S.L., d/b/a PANDA § | | |
| SECURITY INTERNACIONAL § | | |
| Defendants. § | | |

**MEMORANDUM OPINION AND ORDER**
**STRIKING EXPERT TESTIMONY OF BRIAN F. CASTO**

Before the Court is Panda's Motion to Strike the Proposed Expert Testimony of Brian F. Casto (Dkt. 104). For the reasons noted herein, the motion is GRANTED.

District Courts are required to exercise their role as "gate keepers" to ensure the expert testimony is based upon sufficient facts or data, product of reliable principles and methods, with reliable application to the facts of the particular case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Expert testimony which does not relate to any issues in the case is not relevant and therefore not admissible. *Id.* at 591.

In this case, Driving Force Technologies, Inc. ("DFT") in part seeks to recover under a contract and alternatively a quantum meruit claim for its participation in designing a channel sales program for Panda. Brian Casto, DFT's designated expert, defines a sales channel as a route for products to market. He distinguishes this program as an indirect program rather than a direct

1

program, i.e. where a company such as Panda would rely on its own internal sales force to generate sales. In summary, under the agreement between the parties, DFT was to act as an indirect marketer. DFT would develop a plan to bring resellers on board to sale the Panda software product. This would necessarily involve identifying and locating resellers, negotiating with the resellers a price for the product, and presumably negotiating commissions.

Casto's opinion is two-fold. First, he places a value on the contract as if it were still in place. Second, he assesses the value of the work completed which in effect bears on the quantum meruit claim. As to the quantum meruit claim, he divides the damage assessment into five categories. He states that the total cost of the plan requires a breakdown of individual pieces: assessment, plan construction, partner recruitment, customization work and scope change. His calculation for the five categories mentioned is $1.3 million dollars. Then he goes on to say that any effort to build a price for the work DFT completed by adding up the individual components would be inaccurate. He states that a reasonable business person would at least double the estimated costs of the components to properly account for the very high risk of a performance based compensation system. Yet, his opinion as to the reasonable value is nowhere near a doubling of the figure he arrives at in his analysis. Casto also states that Panda changed the scope of the effort by seeking full implementation.

The agreement between the parties sets forth what each is to undertake. There is also a provision in the contract that Panda will pay DFT at the time of signing the agreement for real costs incurred. DFT is to be paid a flat monthly fee and, depending on sales volume, a commission. The contract also provides that Panda will be responsible for all costs associated with the Panda approved marketing and promotional activities. Panda also agrees to pick up travel costs. In addition to the

flat fee structure of $30,000 a month, Panda also agrees to pay 5% of sales from all new resellers signed up after July 1, 2009 and through the duration of the agreement.[1]

The measure of damages for a quantum meruit claim is the reasonable value of the work performed and the materials furnished. *See M.J. Sheridan & Son Co., Inc, v. Seminole Pipeline Co.,* 731 S.W.2d 620, 625 (Tex. App. - Houston [1st Dist.] 1987, no writ). Under Texas law, a *quantum meruit* claim "is an equitable remedy which does not arise out of a contract, but is independent of it." *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). Indeed, a party may recover under a *quantum meruit* theory "only when there is no express contract covering the services or materials furnished. " *Id.* The parties had an express contract. The Court finds that, since quantum meruit damages are not appropriate, Casto's opinion as to reasonable value of services should not be allowed.

Even if the Court found that some quantum meruit damages were appropriate, Casto's method of analysis is totally speculative and without a foundation. There is no demonstration that he looked at the real costs, direct costs ,or even indirect costs associated with DFT's implementation of the system. As to the first category, "assessment," there is no quantifying as to the particular assessment completed by DFT. Casto merely assigns a number at the high end of what an assessment might cost. He does not mention what interviews, tests and industry comparison, to borrow from his own words*,* DFT actually undertook. He goes on to say that it appears that DFT did not charge for completing the assessment and building the plan. In his deposition, he admits that the numbers he arrived at came from his experience; yet, he does not know how many hours it took DFT

---

[1]The contract was later amended to increase the flat fee to $50,000 a month.

3

to do its assessment. He is not sure as to how many hours it took DFT to build the plan. He estimated the hours required for partner recruitment based on the "information in the documents and deduced based on what a reasonable conclusion based on the number of people involved, the dates on the documents, etc." He was unable to produce any calculations as to how he came up with the numbers he arrived at in his reasonable value estimate. Casto admits that the quantum meruit assessment he arrived at does not represent DFT's actual out of pocket expenses or salaries paid. His opinion is nothing more than rank speculation.

Of course, if quantum meruit damages were appropriate, nothing would prevent lay testimony as to the reasonable value of services. Lay testimony is permissible to prove quantum meruit services. *Lamajak, Inc. v. Frazin*, 230 SW3d 786 (Tex. App. - Dallas, 2007, no pet.). But, again, such testimony should be tied to something far more concrete than what Casto concocted.

Casto also theorizes that the value of the contract is a minimum of $3.6 million, which is the sum of 36 months of commissions based on a sales forecast of $2 million per month through the channel. The Court notes that nothing in the contract between the parties contains such a forecast. The only "sales goals" agreed to are for 2009. It appears that the goals, if met, would not trigger a commission since they were lower than the $500,000 a month minimum. In other words, unless sales were over $500,000 a month, DFT would be paid on a flat fee basis of $30,000 a month plus 5% of sales from all new resellers.

Casto's calculations make no sense. It appears that his figure is based on a 5% commission structure for 36 months at roughly $24,000,000 a year. However, that is pure nonsense. If the sales were at $24 million a year, the commission structure would be much higher, depending on the

specified goal (which was never set). Again, the 2009 specified goal reflects the parties' reasonable estimation of what performance would entail. Even if that goal were reached ,the following year's goal was limited to no more than a 1/3 increase over 2009 or $1,995,000. Assuming in 2010 there were $24 million in sales, as opined by Casto, then the commissions due should have been $4,800,000, since that number is certainly 33% higher than the "capped" 2010 sales goal. None of what he says in this respect makes much sense.

The contract is no model of clarity but neither is Casto's analysis. For breach of contract, the measure of damages is just compensation for the loss actually sustained. *Stamp–Ad, Inc. v. Barton Raben, Inc.,* 915 S.W.2d 932, 936 (Tex. App.-Houston [1st Dist.] 1996, no writ). Such loss must be established with a reasonable degree of certainty and cannot be left to speculation. *Wade v. Southwestern Bell Tel. Co.*, 352 S.W.2d 460, 462 (Tex. Civ. App. - Austin 1961, no writ).

In this case, it is hard to link Casto's testimony to DFT's damages. As explained, there was no agreed goal established for 2010 and 2011. Thus, it is hard to show with some certainty what the loss of commissions would have been. The contract was also terminable on two months notice. Given these variables, Casto needed to show more than just a straight loss of commissions. *See Texas Energy Innovation, Inc v. Hino Elec. Power Co., Inc*., 2010 WL 521033 (Tex. App. - Austin, no pet.).

Given that DFT is seeking lost commissions for the company, presumably it would have had to pay some portion of those commissions to its employees and incur other costs. Therefore, any analysis should be on a loss of net income to the business measured by a reasonable certainty, not gross profits. *Miga v. Jensen*, 96 S.W.3d 207, 213 (Tex. 2002). Any loss, however, cannot be based

on mere speculation or hypothesis. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 50 (Tex.1998). The Court finds that Casto's analysis is too speculative and not based on sufficient facts to assist the jury. The motion to strike his expert opinion is thus granted.

**SO ORDERED.**

**SIGNED this 31st day of January, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE