IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DRIVING FORCE TECHNOLOGIES, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-24 |
| | § | (consolidated 4:10cv25) |
| PANDA DISTRIBUTION, INC., | § | |
| d/b/a PANDA SECURITY USA, | § | |
| PANDA SECURITY S.L., d/b/a PANDA | § | |
| SECURITY INTERNACIONAL | § | |
|     Defendants. | § | |

**REPORT AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

Panda Security S.L. has filed a Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and alternatively a Motion to Dismiss Driving Force Technologies'(DFT) claim against it pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. 137). These two consolidated cases contain similar issues arising out of separate contracts. In a separate report to be filed contemporaneously with this one, the Court has recommended that partial summary judgment be granted, leaving only claims as to intentional interference as to External Technology (ET) and breach of contract and injunctive relief as to DFT.

As to the DFT claim, Panda USA and DFT entered into a contract. According to DFT, the contract was supplemented. The contract attached clearly indicates that the agreement was with Panda USA. A complaint will survive a motion to dismiss if its facts, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A court's analysis generally should focus exclusively on what

appears in the complaint and its proper attachments. *Fin. Acquisition Partners LP v. Blackwell,* 440 F.3d 278, 286 (5th Cir. 2006). A plaintiff "must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton v. Pilgrim's Pride Corp.,* 632 F.3d 148, 152–53 (5th Cir. 2010). There are no allegations as to a contract between Panda Spain and DFT only that USA is the alter ego of Spain. For the reasons noted below, DFT has failed to state a claim as to Panda Spain notwithstanding whether Panda Spain should be amendable to jurisdiction.

When the district court rules on the motion to dismiss before holding an evidentiary hearing, the court must accept as true all uncontroverted allegations in the complaint and must resolve any factual disputes in favor of the plaintiff. *See Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 869 (5th Cir. 2000). When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.), *cert. denied,* 513 U.S. 930, 115 S. Ct. 322, 130 L.Ed.2d 282 (1994); *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 592 (5th Cir. 1999). In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson,* 117 F.3d 278, 281 (5th Cir.1997), *cert. denied,* 522 U.S. 1048, 118 S. Ct. 691, 139 L. Ed. 2d 637 (1998); *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1165 (5th Cir.1985).

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov,* 317 F.3d 467, 469 (5th Cir. 2002). Because

the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecomms. Corp.,* 197 F.3d 694, 716 (5th Cir.1999), *cert. denied,* 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.,* 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds,* 466 U.S. 408, 104 S .Ct. 1868, 80 L. Ed. 2d 404 (1984), the Court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999); *Wilson,* 20 F.3d at 647 n. 1; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041 *et seq.* (Texas long-arm statute).

To satisfy due process, (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–78, 105 S.Ct. 2174, 85 L. Ed. 2d 528 (1985); *Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.,* 898 F.2d 1071, 1073 (5th Cir.), *cert. denied,* 498 U.S. 900, 111 S.Ct. 256, 112 L. Ed. 2d 214 (1990). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King,* 471 U.S. at 472 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S. Ct. 2569, 53 L. Ed. 2d 683 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* at 474–75 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). In determining whether the exercise

of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corp. v. North Dakota,* 504 U.S. 298, 307, 112 S. Ct. 1904, 119 L. Ed. 2d 91 (1992). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King,* 471 U.S. at 474 (quoting *Int. Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts ... or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty–Ray Geophysical, Geosource, Inc.,* 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied,* 506 U.S. 867, 113 S.Ct. 193, 121 L. Ed. 2d 136 (1992); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 374 (5th Cir.1987) (citing *Burger King,* 471 U.S. at 475 n. 18; *McGee v. Int. Life Ins. Co.,* 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)).

The minimum contacts requirement is satisfied by either: (1) contacts that give rise to general personal jurisdiction or (2) contacts that give rise to specific personal jurisdiction. *Wilson,* 20 F.3d at 647. General jurisdiction exists when the nonresident's contacts with the forum state are unrelated to the cause of action but are "continuous and systematic." *Id.*

In contrast, specific jurisdiction exists if the cause of action is related to, or arises from, the defendant's contacts with the forum state. *Id.* A single act can be sufficient to establish personal

jurisdiction over a nonresident defendant. *See Lewis v. Fresne,* 252 F.3d 352, 358–59 (5th Cir. 2001). However, when relying on a single instance of contact, the plaintiff's cause of action must "result[ ] from alleged injuries that arise out of or relate to" that instance of contact. *Cent. Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003) (citing *Burger King,* 471 U.S. at 472).

If the minimum contacts test is met, the court must also decide whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice." *Burger King,* 471 U.S. at 476. In making this determination, the Supreme Court has set forth a number of factors that courts must use in making this determination. A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior C. of California, Solano County,* 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (internal quotations omitted).

Relying on *Cont. Bank N.A. v. Meyer*, 10 F.3d 1293 (7th Cir. 1993), ET contends that Panda Security S.L. waived it jurisdictional defense by participating in a Court-ordered mediation. The question squarely presented is whether Panda Security S.L. proceeded in a manner inconsistent with its right to contest personal jurisdiction.

The parties were ordered by the Court to proceed to mediation. They had no choice. Panda Security S.L. has always maintained it was not subject to personal jurisdiction. By analogy, where a party objects to arbitrability but nevertheless participates in the arbitration proceedings, waiver of

jurisdiction over a nonresident defendant. *See Lewis v. Fresne,* 252 F.3d 352, 358–59 (5th Cir. 2001). However, when relying on a single instance of contact, the plaintiff's cause of action must "result[ ] from alleged injuries that arise out of or relate to" that instance of contact. *Cent. Freight Lines Inc. v. APA Transp. Corp.,* 322 F.3d 376, 380 (5th Cir. 2003) (citing *Burger King,* 471 U.S. at 472).

If the minimum contacts test is met, the court must also decide whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice." *Burger King,* 471 U.S. at 476. In making this determination, the Supreme Court has set forth a number of factors that courts must use in making this determination. A court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh in its determination the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Indus. Co. v. Superior C. of California, Solano County,* 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987) (internal quotations omitted).

Relying on *Cont. Bank N.A. v. Meyer*, 10 F.3d 1293 (7th Cir. 1993), ET contends that Panda Security S.L. waived it jurisdictional defense by participating in a Court-ordered mediation. The question squarely presented is whether Panda Security S.L. proceeded in a manner inconsistent with its right to contest personal jurisdiction.

The parties were ordered by the Court to proceed to mediation. They had no choice. Panda Security S.L. has always maintained it was not subject to personal jurisdiction. By analogy, where a party objects to arbitrability but nevertheless participates in the arbitration proceedings, waiver of

the challenge to arbitral jurisdiction will not be presumed. *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1510 (3d Cir.1994), *aff'd,* 514 U.S. 938, 115 S. Ct. 1920, 131 L. Ed. 2d 985; *see also Pa. Power Co. v. Local Union # 272, IBEW,* 886 F.2d 46, 50 (3d Cir.1989). The Court thus finds that there was no waiver of Panda Security S.L.'s motion to dismiss. Taking Plaintiffs' argument to the extreme, responding to discovery or participating in depositions would operate as a waiver. *See also Kawasaki Heavy Indus. Ltd. v. Bombardier Recreational Prod.*, 660 F.3d 988 (7th Cir. 2011) (participation in mediation did not waive right to arbitrate) *See also Brokerwood Intern. (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 Fed. App'x. 376 (5th Cir. 2004); *Sunlight Saunas, Inc., v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1011 (D. Kan. 2006) (participation in mediation did not waive jurisdictional challenge). A review of the docket history demonstrates that Panda Security S.L. has consistently and ardently maintained its challenge to the Court's jurisdiction. Plaintiffs' attempt to play "gotcha" fails.

ET also argues that Panda Spain is subject to jurisdiction under an alter ego theory. Plaintiffs cite to *United States v. Jon-T Chem., Inc.*, 768 F.2d 686 (5th Cir. 1985) as a guideline for determining alter ego. In that case, the Fifth Circuit recognized that exceptions to limited liability may apply in cases of fraud or where the parent company totally dominates and controls its subsidiary, operating the subsidiary as its business conduit or agent. *Id* at 671. No allegations of fraud are made here, so the Court directs its attention to the latter consideration.

"The control necessary to invoke what is sometimes called the 'instrumentality rule' is not mere majority or complete stock control but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but

a business conduit for its principal." *Id.* (citing 1 W. Fletcher, [Cyclopedia of the Law of Private Corporations] § 43 at 204-05 [rev.perm.ed. 1963]). As the Fifth Circuit held, one hundred percent ownership and identity of directors and officers, are, even together, an insufficient basis for applying the alter ego theory. *Id.*

The court goes on to enumerate a number of factors to consider. However, it is important to distinguish tort versus contract claims for the purposes of alter ego. Under Texas law, the corporate form is not to be disregarded unless the corporate entity is being used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime. *State v. Swift & Co.*, 187 S.W.2d 127, 131,132 (Tex. Civ. App. – Austin 1945, writ ref'd).

DFT has not pled fraud. Its Sixth Amended Complaint alleges nothing more than a breach of contract action. Even if Panda Spain is amendable to jurisdiction, the Court finds that its motion for failure to state a claim for relief under 12(b)(6) should be granted. The Court next will address the elements of alter ego as it applies to ET.

It is important to distinguish that jurisdictional veil-piercing and substantive veil piercing have different elements of proof, which has largely been overlooked in Plaintiffs' arguments. *See e.g. Wells Fargo Express Co.*, 556 F.2d 406, 425 (9th Cir. 1977) (noting that undercapitalization, "which is important to deciding whether to pierce the veil raised by a subsidiary corporation in order to hold the parent corporation liable for failure of the subsidiary to meet its debts, may not be relevant to a showing that the two corporations are in fact one so as to establish that the out-of-state corporation—be it parent or subsidiary—is present within the forum for jurisdictional purposes"; instead, "the operative question is whether the two corporations are in fact mere 'divisions' or

7

'branches' of a larger whole"); *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707, 721 n. 5 (Tex.App. – Austin 2000, pet. dism'd w.o.j.) ("Although many of the factors relevant to [determining whether subsidiaries' contacts should be imputed to parent] may also be relevant in determining whether a parent corporation should be liable for the actions of its subsidiary, the determination whether two corporate entities are one and the same for jurisdictional purposes is distinct."), *cert. denied,* 535 U.S. 1077, 122 S. Ct. 1960, 152 L. Ed.2 d 1021 (2002); *see also* 2–32 William V. Dorsaneo, TEXAS LITIGATION GUIDE § 32.06 (2005). This makes sense in light of the fact that personal jurisdiction involves due process considerations that may not be overridden by statutes or the common law. *Cf. City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 667–68 (6th Cir. 2005) (refusing, in case involving jurisdictional allegations based on alleged "control person" under the securities laws, to "substitute our analysis of the securities laws' substantive bases for liability for the required, due-process based personal jurisdiction analysis"); *AT & T Co. v. Compagnie Bruxelles Lambert,* 94 F.3d 586, 591 (9th Cir. 1996) (concluding that "liability is not to be conflated with amenability to suit in a particular forum. Personal jurisdiction has constitutional dimensions, and regardless of policy goals, Congress cannot override the due process clause, the source of protection for non-resident defendants."); *In re Baan Co. Sec. Litig.,* 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (noting that liability under the Securities Act "cannot on its own support personal jurisdiction," as such an approach "impermissibly conflates statutory liability with the Constitution's command that the exercise of personal jurisdiction must be fundamentally fair"); *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 790–91 (Tex. 2005) (rejecting theory that where defendant "directed a tort" was relevant inquiry for specific

jurisdiction, as such a rule improperly "equat[ed] the jurisdictional inquiry with the underlying merits"); *Nat'l Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 773 (Tex. 1995) (observing that "[c]onspiracy as an independent basis for jurisdiction has been criticized as distracting from the ultimate due process inquiry: whether the out-of-state defendant's contact with the forum was such that it should reasonably anticipate being haled into a court in the forum state" and declining to recognize personal jurisdiction based on conspiracy allegation); John A. Swain & Edwin E. Aguilar, *Piercing the Veil to Assert Personal Jurisdiction Over Corporate Affiliates: An Empirical Study of the Cannon Doctrine,* 84 B.U.L. REV. 445, 453 (2004) (noting that "the principle of limited liability is statutory and does not speak to judicial jurisdiction"). *PHC-Minden L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 174-175 (Tex. 2007).

ET argues that Spain and USA have common stock ownership. Panda USA is a subsidiary of Panda Software Subsidiaries, S.L. which is a wholly owned subsidiary of Panda Spain. (Declaration of Larrinaga Garcia). ET argues that, because Subsidiaries owns the stock of USA and Spain owns the stock of Subsidiaries, there is common interlocking ownership. A subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders. *See Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571 (Tex. 1975).

ET next argues that the parent and subsidiary have common directors and officers. ET points to the fact that Juan Perez is a director and officer of both Spain and USA. Other than Juan Perez, Panda Spain and USA do not have common employees, officers or directors. *See* Declaration of

Larringa Garcia. The Court finds that one common director and or officer does not warrant a finding of alter ego. *Gentry,* 528 S.W.2d at 573.

ET argues that the parent and subsidiary file consolidated statements and tax returns. An example given is Exhibit 18. Exhibit 18 presumably is a 2008 return filed in Spain by Panda Spain. Only one page of the return refers to Panda Distribution, Inc. The name is listed along with other entities under "Operaciones con personas o entitdades vinculadas" which freely translated means transactions with related entities. It is not a consolidated tax filing. The companies file separate tax returns. *See* Declaration of Larringa Garcia.

ET also argues that Spain controls the business operations of USA. For jurisdictional analysis, there is nothing wrong with a parent's involvement in its investment. "Appropriate parental involvement includes monitoring the subsidiary's performance, supervision of the subsidiary's finance and capital budget decisions, and articulation of general policies." *PHC-Minden*, 235 S.W.3d176.

ET argues that Spain caused the incorporation of USA. Plaintiffs present no proof, only conclusory arguments. However, even if such was the case, it is not in itself justification for finding alter ego.

ET argues that Panda USA does not observe basic corporate formalities in that it has asked for minute books, but none have been produced. The declaration of Larringa Garcia states that each maintain their own separate corporate records, such as minutes of meetings and resolutions of directors. In any event, failure to comply with corporate formalities is no longer a factor in considering whether alter ego exists. *See* TEX. BUS. CORP. ACT ANN. art. 2.21(A)(3) (Vernon 2003);

*Howell v. Hilton Hotels Corp.,* 84 S.W.3d 708, 714 (Tex.App. – Houston [1st Dist.] 2002, pet. denied).

Therefore, any argument that Panda Spain and or Panda USA failed to comply with corporate formalities is disregarded for the purposes of alter ego analysis. If the plaintiff seeks to assert jurisdiction over a nonresident defendant under an alter-ego theory, the plaintiff has the burden of proving its alter-ego allegation. *PHC–Minden,* 235 S.W.3d at 173. To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiff must prove the parent controls the internal business operations and affairs of the subsidiary. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *Id.* at 175 (quoting *BMC Software Belg., N.V.,* 83 S.W.3d at 799).

Plaintiffs also contend that Panda Spain and USA have numerous teleconferences in regard to meetings as well as exchanging emails related to marketing. Both Plaintiffs cite the deposition of C. Kruesopon a Panda USA employee who stated that Spain controlled the sales and extensions of credit to Panda US customers. ET also contends USA and Spain either filed consolidated tax returns or at least had financial information as to both entities on various financial filings. Filing consolidated tax returns is not evidence of alter ego. *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 376 (Tex. 1984). Established law indicates that the blending of activities as alleged here cannot suffice to treat two corporations as one unless the relationship is one used to defeat public convenience, justify wrongs, protect fraud, or defend crime. *See State v. Swift & Co.*, 187 S.W.2d 127 (Tex. Civ. App. – Austin 1945, writ ref'd). Alter ego must be shown from the total dealings

11

between the two companies. *See Gentry*, 528 S.W.2d 573-76.

One of the points raised by Plaintiffs is that Panda USA was grossly undercapitalized. Inadequate capitalization may be a basis for disregarding the corporate fiction. *See Torrdgrossa v. Szelc*, 603 S.W.2d 803, 805 (Tex. 1980). However, this consideration often comes up in cases dealing with fraudulent activities such as where creditors are deprived of available assets. *Id*. As stated, this is not necessarily a jurisdictional consideration. Plaintiffs cite to the deposition of Chomnard Kruesopon as evidence of grossly inadequate capitalization. Kruesopon worked for USA. However, she states that once every three months or so, starting in 2008, USA would have to obtain capital for working expenses. This was never a problem before 2008. The Court finds that the evidence presented hardly merits the term "grossly undercapitalized."

The Court finds that Plaintiffs have failed to show that the actions of Panda Spain were of such nature that the activities of the two were "fused." There were separate corporate records. Separate tax returns were filed. There were separate bank accounts. Each company maintained its own accounting records. The fact that Spain may have loaned capital to USA does not fuse the corporations for alter ego purposes. The companies maintained separate offices and according to the declaration of Larringa Garcia corporate formalities between the two were strictly observed. Larringa Garcia also avers that the day to day business decisions of USA were made by its own employees. The fact that Spain had meetings with USA and participated in long term strategic decisions is not the type of melding contemplated for establishing alter ego. Plaintiffs' alter ego theory fails.

Finally, ET and DFT argue that, under a minimum of contact analysis, Spain should be amendable to jurisdiction. First, they argue that, through Santana, Spain contracted with ET and DFT. The contracts are clearly with USA, not Spain.

Second, Plaintiffs argue that Spain caused and facilitated the injection of its software and products in the stream of commerce over the internet and well as direct dealings with ET, DFT and others. ET points to a meeting that Santana attended in McKinney. His participation was described only as minimal. Yet he was an officer of USA, and the Court finds that this doesn't mean Spain was amendable to jurisdiction. *See* Zevallos deposition. Plaintiffs also cite Exhibit 34 which is a memo referring to a payment relation with the Bateman Group, a California company. Exhibit 42 likewise references the Bateman Group. Exhibit 56 is an email from Panda USA concerning commercials in the DFW area. The thrust of this is that Bateman was paid by Spain and then marketed commercials for USA in the Dallas market. The Court finds no minimum contacts sufficient to warrant consideration.

Plaintiffs also argue that Santana participated in and fostered Spain's internet sales by selling and providing passwords to ET and other Texas residents. Nothing in the cited exhibits demonstrates this. Plaintiffs also argue that Santana participated in and fostered the sale of Spain's software products through ET and other resellers recruited by DFT. Again, the exhibits cited only demonstrate that Santana was in McKinney, Texas for a meeting. Santana was an officer of USA. Plaintiffs also cite to Exhibit 37 as demonstrating that Spain was soliciting in Texas. The email is from a Garcia at pandasecurity.com addressed to several folks at Warner Bros. addressing an advertising campaign. DFT cites to a contract which it states warrants a finding of specific

jurisdiction. However, the contract is with USA, not Spain. The Court has reviewed the evidence submitted by Plaintiffs, and such evidence does not warrant jurisdiction. In fact, much of what Plaintiffs argue is skewed and not entirely accurate.

Panda Spain admits that its only contact with Texas occurs over the internet. When an order is purchased over the internet, it is processed by Spain. There are no goods shipped, only a software download over the customer's computer. In 2009, Panda Spain made only a small fraction of its sales in Texas. All sales to individual customers were made in response to that person placing an order over the internet. Plaintiffs spend little time on whether internet sales warrant a finding of jurisdiction and in fact ignore controlling Fifth Circuit law.

In *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999), the Fifth Circuit adopted a three-part test to determine whether a company doing business over the internet should be amendable to personal jurisdiction. Citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa.1997), the Court recognized three spectrums of internet business arrangements. The first involved the knowing and repeated transmission of computer files over the internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, then jurisdiction would be proper. At the opposite end of the spectrum is the passive consideration where an internet site is available to users in foreign jurisdictions. These sites contain only posted information of general interest. Completing the "Goldilocks" analysis is the middle ground occupied by interactive web sites where a user can exchange information with the host computer. In these cases, the exercise of the jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of

information that occurs on the web site. *Id*. at 1124. The Fifth Circuit in *Mink* found no personal jurisdiction. Yet, the Fifth Circuit distinguished its holding on the fact that orders were not taken through AAAA's website. Here, orders are taken through Spain's website.

Yet, the Court in *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) noted that *Mink* is not well-adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction. In other words, while it may be doing business *with* Texas, it is not doing business *in* Texas. *Id.* at 471. *Revell* goes on to cite the Sixth Circuit decision in *Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) which held that four thousand internet contacts did not establish personal jurisdiction.

In the end analysis as to general jurisdiction, the Court believes that Fifth Circuit authority lies squarely with the Spain. The contacts were made from Texas presumably through information on a website. Any contract was consummated in Spain when payment was received and software downloaded. Any other holding would mean that any payment over the internet, no matter how originated nor how small, subjects a foreign corporation not doing business in Texas, maintaining no office in Texas, paying no taxes nor maintaining any agent in Texas, subject to jurisdiction. If the dispute arose out of the product sold, then as noted in *Revell*, that is a different consideration. Here, no dispute arose out of customers purchasing a license for security software.

## RECOMMENDATION

Based on the foregoing, the Court recommends that Panda Security's Motion to Dismiss (Dkt. 137) be GRANTED and that the claims against Panda Security S.L. be dismissed for want of

jurisdiction.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 274, 276–77 (5th Cir. 1988).

**SIGNED this 10th day of May, 2012.**

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE