IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DRIVING FORCE TECHNOLOGIES, INC., | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:10-cv-24 |
| | § | (consolidated 4:10cv25) |
| PANDA DISTRIBUTION, INC., | § | |
| d/b/a PANDA SECURITY USA, | § | |
| PANDA SECURITY S.L., d/b/a PANDA | § | |
| SECURITY INTERNACIONAL | § | |
|     Defendants. | § | |

**ORDER AND REPORT AND RECOMMENDATIONS OF
UNITED STATES MAGISTRATE JUDGE**

Now before the Court are Panda Distribution, Inc. and Panda Security, S.L.'s (Panda) Motion for Partial Summary Judgment against External Technologies (ET) and Driving Force Technologies (Dkt. 138) and Defendants' Objections to, and Motion to Strike, Evidence Submitted With Plaintiffs' Response to Panda's Motion for Partial Summary Judgment (Dkt. 161). The motion to strike is DENIED, and, as set forth below, the Court finds that the motion for summary judgment should be GRANTED in part and DENIED in part.

### STANDARD

Summary judgment is proper when there is an absence of genuine issues of material fact and one party is entitled to judgment as a matter of law. *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 131 (5th Cir. 1992). Thus, "[t]he appropriate inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one

1

party must prevail as a matter of law.'" *Septimus v. Univ. of Houston,* 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

## MOTION TO STRIKE

Defendants have filed Objections to, and Motion to Strike, Evidence Submitted With Plaintiffs' Response to Panda's Motion for Partial Summary Judgment (Dkt. 161). The Court notes Defendants' evidentiary objections, and the Court has relied on only competent evidence in making its findings below. To the extent Defendants seek a more detailed ruling, the request to strike the evidence is otherwise DENIED.

## MOTION FOR SUMMARY JUDGMENT

There are two contracts involved in this dispute. The first is between External Technologies (ET) and Panda Security, Inc. The second is between Panda Security USA and Driving Force Technologies (DFT). Panda's motion for partial summary judgment addresses claims regarding both contracts.

### Defamation

ET claims it was defamed. Although the pleading is at best vague, the nature of the defamatory statement was that ET was no longer allowed by Panda to be a distributor or reseller of Panda products because of some *undefined lack of performance* by ET such as to justify termination. In its response to Panda's Motion for Summary Judgement, ET argues that the cumulative effect of contacting and falsely warning listed ET customers that ET was no longer authorized to sell Panda products, and was no longer a Panda reseller, amounts to defamation.

In Texas, the elements of defamation are that (1) the defendant published a factual statement, (2) capable of a defamatory meaning, (3) concerning the plaintiff, (4) while acting with either negligence or malice. *Vice v. Kasprzak*, 318 S.W.3d 1, 12 (Tex. App.– Houston [1st Dist.] 2009, pet. denied). A statement is defamatory when it tends to injure a person's reputation. *See San Antonio Express News v. Dracos,* 922 S.W.2d 242, 247 (Tex. App.– San Antonio 1996, no writ).

In this case, there is no evidence in the summary judgment record of any particular statement or any evidence that clarifies the very general conclusions raised in the pleading. The affidavit submitted by ET does not address this claim. The failure to identify the factual basis of this claim justifies granting judgment as to the defamation claim. *See Celotex Corp., v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The contemplation is that ET would go beyond the pleadings to demonstrate a fact issue for trial. It did not. Defendant's motion for summary judgment should be GRANTED as to defamation.

### Tortious Interference with Existing Contract

Two limiting factors confront ET's claim for tortious interference. First, its license was a non-exclusive one. Second, the contract could be terminated for breach, and in addition, after one year on three-months' notice. ET had a non-exclusive right to resell Panda's software programs. (D. Ex. 25).

A simple non-exclusive license does not encompass the legal right to exclude others. *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1481 (Fed. Cir. 1990). ET claims that Panda interfered with existing contracts in having ET's customers make payment to Panda for the licensed software. Panda responds that ET breached its contract with Panda by not paying for the programs and thus, at least

as to Base 2, an identified customer may not recover damages. ET has specifically identified two other customers with whom it had contracts and for which there was interference by Panda. ET also generally refers to Exhibit A to its Complaint noting that all of these customers had contracts that were interfered with by Panda. The agreement provides that Panda may appoint additional partners, distributors, OEMs or other entities to directly or indirectly license and/or support Software Programs in the defined territory or elsewhere without liability or obligation to partner.

Under Texas law, to state a *prima facie* claim for tortious interference with an existing contract, a plaintiff must allege facts showing that: (1) a contract subject to interference exists; (2) the act of interference was willful and intentional; (3) the intentional act proximately caused the plaintiff's damage; and (4) actual damage or loss occurred. *Fluorine On Call, Ltd. v. Fluorogas Ltd.,* 380 F.3d 849, 864 (5th Cir. 2004) (citing *Thrift v. Estate of Hubbard,* 44 F.3d 348, 356 (5th Cir.1995)). Based on the summary judgment record before it, the Court finds that there is a fact issue for the jury to sort out as to the claim of tortious interference.

In any event, damages are limited to those which can be proved that occurred before the termination of the contract during the renewal period. Panda gave notice to ET that it was not renewing the contract pursuant to Section 2 of the agreement. (Ex. 11). The notice was sent more than 30 days prior to the expiration of the then current term. The contract was lawfully terminated, and any complaints for conduct or damages after that time fail, unless such relate to the pre-termination date. In other words, ET will have to come forward with proof that, during the period from October 10, 2009 through January 13, 2010, identified existing contracts were interfered with by Panda and the amount of loss that can be demonstrated by that interference. Thus far, ET has

4

specifically identified five contracts. At this time, however, Defendant's motion for summary judgment should be DENIED as to tortious interference.

## Interference with Prospective Relations

ET also claims that Panda interfered with prospective contracts. This cause of action is more problematic for ET, given the notice of termination. One of the contracts identified is the TIPS/TAPS contract which was awarded to ET in September 2009. This was an existing contract. ET claims that Panda contacted TIPS/TAPS in December 2009 and informed the organization that ET would no longer be an authorized Panda reseller after January 2010 and that a Scholastic group was the authorized distributor. ET also claims that it has shown prospective contractual relations in three categories: 1,600 active customer accounts; 11,028 TIPS/TAPS accounts and an additional 90 prospective reseller entities that ET was in the course of contacting. The first two categories identified refer to existing contracts with, at best, the prospect for future profit. In her affidavit, ET's CEO, Teresa Hartsfield, identifies five customers with specificity. All of these appear to have been existing customers. There is a dispute over what happened in regard to the Base 2 NC commission. Heartsfield states that Panda directed Base 2 to pay Panda direct. Panda says this is conclusory and there is no evidence to support this assertion. Plaintiff's counsel points to a deposition of Widmaier. Counsel contends that because Heartsfield was at the deposition, she has personal knowledge. What Widmaier states is that Base 2 was pretty upset with the way they were being treated by ET. He told them to just pay him directly. He also testified that he thought ET got their commission off the sale. Nothing in the testimony reflects that Panda interfered with the Base 2 NC contract. It was actually Base 2 which contacted Panda. Widmaier actually stated that he originated the deal but put it

through ET to get the deal done quickly. There is no other evidence to refute what happened. The amount in dispute on this contract is a loss of commission totaling $586.00. Heartsfield also claims that Panda interfered with a contract between ET and Retail Data Systems.

In effect, after ET was terminated, Panda converted Retail to a Panda reseller and sold direct to Retail. Panda says "Where's the contract?" Counsel refers to certain invoices, but the Court has found no written contract and assumes that the contract was an oral contract. The Court has reviewed the deposition of Antonian referenced in the affidavit, and that sheds little light on the "contract issue."

As to Vermillion, Heartsfield states that the school district was dissatisfied with its purchase of the Panda standard anti-virus program. She states that ET had been negotiating with Vermillion to exchange the standard program for a premium PMOP. She claims that Panda substituted the premium product without any cost increase, causing ET to lose commissions totaling $5,774. The Court believes that the agreement lends support to Panda's efforts to support the end user. It was free to do so under the agreement in that ET had a non-exclusive right to sell and support which means others could do so also. However, the facts may be determined by the jury.

ET next complains about the TIPS/TAPS contract. The Court has not been able to find the underlying contract but has found a letter from TIPS awarding ET vendor status.[1] There appears to be no dispute that there was in fact a contract. Again, any damages would be limited to those contracts that ET can show flowed from the lost contracts. Matters as to duration of potential

---

[1] The Court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. TEX. LOCAL R. CV-56(d)

contracts or pricing will have to be proven at trial. For the time, ET has put forth enough evidence to demonstrate a fact issue.

Elements of tortious interference with prospective contract are: (1) a reasonable probability that the parties would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference. *Baty v. ProTech Ins. Agency,* 63 S.W.3d 841, 860 (Tex.App.– Houston [14th Dist.] 2001, pet. denied). The Texas Supreme Court has also instructed that a party cannot be liable for inducing another party "to do what it had a right to do" under a contract. *ACS Investors, Inc. v. McLaughlin,* 943 S.W.2d 426, 431 (Tex. 1997).

The Court finds that there is a fact issue on interference with existing and potential contracts particularly as to TIPS/TAPS. Although the Court struck the expert testimony of ET's witness, a lay person can testify as to the damages sustained provided that the requirements of Federal Rule of Civil Procedure 701 are met. *See Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 265 (2d Cir.1995) ("[A] president of a company, such as Cook, has 'personal knowledge of his business ... sufficient to make ... him eligible under Rule 701 to testify as to how lost profits could be calculated.'") (internal citations and quotation marks omitted), *cert. denied,* 516 U.S. 1114, 116 S. Ct. 916, 133 L. Ed. 2d 846 (1996). The Court has also reviewed evidence submitted that reflects monies earned by the company which sold TIPS Panda software after ET's termination. This likely

would be some evidence of lost profits. Defendant's motion for summary judgment should be DENIED as to interference with prospective relations.

## **Promissory Estoppel**

ET's promissory estoppel claim centers on the promise it contends Panda made that ET would be a distributor. This claim was made at the time the parties were under the Elite Partner Agreement. Panda states there was never a definite promise by Panda and that the idea was merely kicked around. Heartsfield contends that Tom Kruesopon of Panda promised to make ET a distributor. She states he knew that ET and others would rely on the promise. She also goes on to state that he later directed Panda staff to act upon the promise in subsequent dealings. Exhibit 11 to the Response to Strike contains a letter announcing that Panda is a distributor. In its reply, Panda then states that ET was made distributor and received the 40% discount for some period of time. Heartsfield's affidavit is unclear as to how she relied on the promise. Her counsel, in his reply to the Motion for Partial Summary Judgment, lists a number of expenses ET incurred, but there is nothing in the materials submitted to the Court which approximate these assertions. Counsel merely refers to the Fifth Amended Complaint.

To avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. *Piazza's Seafood World, LLC v. Odom,* 448 F.3d 744, 752 (5th Cir. 2006). The Court finds the element of reliance damages was not properly identified in ET's response. The Court is merely directed to the pleadings, and such is not proper summary judgment evidence. Judges are not like pigs, hunting for truffles buried in the

briefs. *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

The elements of promissory estoppel are a promise that the promisor can foresee will cause substantial, detrimental reliance by the promisee. *See English v. Fischer,* 660 S.W.2d 521, 524 (Tex.1983). To show detrimental reliance, the plaintiff must show that he materially changed his position in reliance on the promise. *Miller v. Raytheon Aircraft Co.,* 229 S.W.3d 358, 379 (Tex. App.– Houston [1st Dist.] 2007, no pet.). For many years, Texas courts have held that promissory estoppel becomes available only in the absence of a valid and enforceable contract. *See Montgomery Indus. Int'l Inc., v. Thomas Constr. Co.*, 620 F.2d 91, 95 (5th Cir. 1980). Of course, here, the parties had an existing agreement. In any event, damages are limited to reliance damages and none have been demonstrated with specificity. *See Transcontinental Realty Investors, Inc. v. John T. Lupton Trust*, 286 S.W.3d 635 (Tex. App.– Dallas, 2009, no pet.). Defendant's motion for summary judgment should be GRANTED on this issue of promissory estoppel.

### DFT's Quantum Meruit Claim

DFT claims that it is entitled to payment of work done before a contract was signed with DFT. This work involved the design of a channel sales program which DFT claims is currently used by Panda. To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *See Vortt Exploration*

9

*Co., v. Chevron U.S.A., Inc.*, 787 S.W.2d 942 (Tex. 1990). Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished. *Truly v. Austin,* 744 S.W.2d 934, 936 (Tex. 1988).

Here, the parties had a written agreement which expressly addressed the matters for which DFT seeks reimbursement. The contract specifically indicates that DFT will develop a channel program. The agreement also indicates that Panda will pay DFT at the time of the agreement for real costs already incurred. Even Brent Heartsfield admitted that the only expectation of payment from Panda was what was spelled out in the contract. *See* Heartsfield deposition, 138-21, pages 41-41 of Ex. Therefore, Panda's Motion for Partial Summary Judgement on the quantum meruit claim should be GRANTED.

### Panda's Breach of Contract Counterclaim

Panda has sued ET for breach of contract. Neither party denies that there was an existing and enforceable contract. Panda has submitted a declaration with a statement of account attached demonstrating that ET still owes Panda $79,359.76. Counsel for ET responds in argument that the claim represents unfulfilled purchase orders relating to 20,000 licenses for Panda's Managed Office Protection. The Court notes that the end user for 10,000 of these licenses was Driving Force Technologies, owned by Brent Heartsfield. ET was given special payment terms for these licenses.

Ms. Nunn, the controller of Panda, indicates that, in June and July, ET ordered pools of licenses for Panda's Managed Office Protection. Thereafter, as ET found buyers for the licenses, it sent a purchase order to Panda indicating the number of licenses needed. Upon receiving the

purchase order and entering the information into the computer, an email would automatically go out providing the key, allowing the end user to activate the licenses which were valid for one year from the date of activation. Panda then would send an "invoice" for $0.00 confirming the number of licenses that had been provided out of the ET pool. The licenses appear to have been sold at a 50% discount to ET which was of course able to sell at whatever price it could get. There appears to be no dispute that ET ordered these licenses. Teresa Heartsfield, in her declaration, states that at one point in her dealings with Panda she paid $35,000, $13,000 of which was to be applied to her then open account. The balance of $22,000 was to be applied to purchase PMOP licenses from those shown in the ET purchase orders involving 20,000 licenses that were to be later created as needed. She says she never received the PMOP licenses to resell nor did she get her $22,000 back. At the time Heartsfield paid the $35,000 she references, her outstanding debt on the open account was in excess of $110,000. The fact that she states that $22,000 was to be applied to the 20,000 licenses shown in ET's purchase orders undermines her and her counsel's spin on the facts.

Exhibit 34 is the purchase order. It reflects the pool licenses for Driving Force Technologies. Exhibit 35 is the email between Panda and ET's Heartsfield which confirms Panda's position that no refund on the pool of licenses was permitted. The Court finds that on this simple open account claim there is no fact issue and Panda is entitled to the sum of $79,359.76 on its breach of contract counterclaim.

Left for resolution are the following claims: ET's claims for tortious interference with existing and prospective contracts and DFT's claims for breach of contract and injunctive relief as to the use of its claimed proprietary programs.

Therefore, Panda's Motion for Partial Summary Judgment (Dkt. 138) should be GRANTED as to ET's claims of defamation and promissory estoppel and DFT's quantum meruit claim, and ET and DFT shall take nothing by those claims, GRANTED as to Panda's breach of contract counterclaim against ET, and Panda is entitled to the sum of $79,359.76 as to that claim, and DENIED as to ET's claims of tortious interference with existing contracts and interference with prospective relations.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(c).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148, 106 S.Ct. 466, 471, 88 L. Ed. 2d 435 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

**SIGNED this 10th day of May, 2012.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE